IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ABBIE BYRD, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:25-cv-1039 |
| TITLEMAX OF SOUTH CAROLINA, | ) | |
| INC. and TITLEMAX OF VIRGINIA, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Lindsey A. Freeman, United States District Judge

This is one of 22 cases involving a dispute about high interest loan transactions between a series of borrowers and "TitleMax" entities. Most of these cases have proceeded by mass action and individual arbitration. Defendants now want to change that practice. In their view, the 87 Plaintiffs here were improperly joined, and they should file separate individual actions. The Court disagrees. Plaintiffs meet the requirements of permissive joinder under Federal Rule of Civil Procedure 20, and the Court declines to sever pursuant to Federal Rule of Civil Procedure 21. For the reasons stated below, Defendants' motion is DENIED.

**FACTUAL BACKGROUND**

Plaintiffs are 87 North Carolina residents who filed a complaint in the North Carolina Superior Court against TitleMax of Virginia, Inc. and TitleMax of South

1

Carolina, Inc. ("Defendants") on October 9, 2025. Dkt. 4 ¶ 1. Shortly thereafter, they amended their complaint, which is the operative complaint. Dkt. 9 ("Amended Complaint").

Plaintiffs allege in their Amended Complaint that certain car title loan transactions between them and the Defendants violated North Carolina law. Dkt. 9 ¶¶ 1, 25-38. They argue that (1) Defendants violated the North Carolina Consumer Finance Act ("CFA"), N.C. Gen Stat. § 53-190, by charging Plaintiffs an annual percentage rate ("APR") exceeding the maximum allowed under the CFA, Dkt. 9 ¶¶ 25-30; and (2) Defendants used "unfair and deceptive trade practices" in or affecting commerce in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen Stat. § 75-1.1, Dkt. 9 ¶¶ 31-38.

Defendants seek to arbitrate the claims by enforcing an arbitration agreement contained in the loan contracts. *Id.* ¶¶ 44-45. Defendants removed the case to this Court on November 14, 2025. Dkt. 1 (Notice of Removal). On the same day, Defendants filed a motion to sever Plaintiffs' claims and dismiss all Plaintiffs without prejudice except for the first named Plaintiff—Abbie Byrd—for misjoinder pursuant to Federal Rules of Civil Procedure 20 and 21. Dkt. 4 (the "Motion"). The parties have briefed the merits of the Motion. *See* Dkts. 5 (Memorandum in Support); 20 (Response in Opposition); 22 (Reply in Support).

2

ANALYSIS

The Court is well within its discretion to permit joinder here.  Each Plaintiff is a North Carolina resident who borrowed from at least one of the two TitleMax Defendants through the same type of alleged high-interest title lending scheme that Plaintiffs claim violates North Carolina law.  Moreover, splitting this case into 87 individual actions to determine the same threshold issues before considering whether to send the cases to arbitration is an unnecessary, administrative nightmare.  Joinder will not only be convenient to the Court, but it will also "expedite the final determination of [these] disputes."  *Saval, v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (internal quotations omitted).

The Rules of Civil Procedure dictate the result here.  First, permissive joinder under Rule 20 is appropriate because Plaintiffs' right to relief arises out of the same series of transactions or occurrences, and questions of law or fact common to all plaintiffs will arise in the action.  *See infra* at Section I.  Second, the Court is not persuaded that either prejudice or administrative concerns warrant exercising its discretion to sever pursuant to Rule 21.  *See infra* at Section II.

## I.      Plaintiffs Meet the Requirements for Permissive Joinder Under Rule 20.

Pursuant to its "wide discretion over permissive joinder," *Sakthivel v. Jaddou*, No. 21-1207, 2023 WL 2888565, at *5 (4th Cir. Apr. 11, 2023), the Court finds the 87 Plaintiffs in this action were properly joined in this case.  Rule 20 states,

3

> [p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). While both requirements must be met for permissive joinder to be proper, the transaction and common-question requirements are not "rigid tests." 7 Charles Alan Wright, et al., Fed. Prac. & Proc. § 1653 (3d ed. 2026). The Court finds both requirements are met here.

### A. Plaintiffs' "right to relief" arises out of the same transaction or occurrence.

Plaintiffs meet the first prong of Rule 20(a)(1) because their "right to relief … arise[es] out of the same transaction or occurrence or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1). While a right to relief is easily understood— essentially a plaintiff's claim for relief, *see Saval*, 710 F.2d at 1031 (equating right to relief with claim for relief)—"transaction or occurrence or series of transactions or occurrences" depends heavily on the nuances of each case. *Cf. Slep-Tone Ent. Corp. v. Mainville*, No. 3:11-cv-122, 2011 WL 4713230, at *4 (W.D.N.C. Oct. 6, 2011) (transaction requirement generally analyzed on a "case by case basis") (internal quotations omitted).

Plaintiffs' claims here all stem from the same alleged high-interest title lending scheme and unfair trade practices and thus are logically related to the same transaction or occurrence. "Two claims arise from the same transaction — and therefore can be joined in the same action — when there is a 'logical relationship' between them." *Courthouse*

4

*News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021) (internal quotations omitted); *see also*

*Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926).  Thus, "all 'logically related' events

entitling a person to institute a legal action against another generally are regarded as

comprising a transaction or occurrence."  *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333

(8th Cir. 1974).  There are two steps to the analysis: (1) determining the scope of the

transaction by referring to the claims; and (2) determining whether the claim-related

events of the joining plaintiffs generally fit within the scope of the transaction.[1]

Plaintiffs' claims[2] concern North Carolina's public policy protecting North

Carolina residents from (1) out-of-state, exceedingly high-interest, low-value loans (the

CFA claim), and (2) unfair and deceptive commercial practices associated with those

loans (the UDTPA claim).  Thus, according to Plaintiffs' allegations in the Amended

Complaint, the scope of the transaction is a title loan lending scheme that violates North

---

[1] An overview of Fourth Circuit case law confirms these two steps.  In both *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618–19 (4th Cir. 2001) and *Saval*, 710 F.2d at 1031, the Court looked to the claims asserted to determine the scope of the transaction before analyzing whether the joining plaintiffs' conduct was part of the same transaction.

Additionally, the Fourth Circuit recognizes that "[a]bsolute identity of all events is unnecessary" for joinder.  *Schaefer*, 2 F.4th at 325 (quoting *Mosley*, 497 F.2d at 1333).  Rather, "Rule 20 permits joinder of "all reasonably related claims for relief by or against different parties."  *Id.*; *see also Hinson*, 239 F.3d at 613 (finding transaction where the joining plaintiffs alleged "similar loans," with "the same or similar types of violations," even though there were some factual differences between joining plaintiffs and original plaintiffs.)

[2] Plaintiffs also assert two additional claims for relief: (1) punitive damages; and (2) a motion to compel arbitration.  *Id.* ¶¶ 39-45.  However, both claims are not independent causes of action but rather are dependent on the first two claims for relief.

Carolina law. To effectuate this alleged scheme, Defendants, among other things, (1) solicited residents of North Carolina to travel to another state (namely, Virginia or South Carolina) to enter into a loan transaction with them that was subject to an exceedingly high interest rate, *see* Dkt. 9 ¶¶ 1-3, 9, 13, 18-20, 26, and (2) as collateral, secured liens on the North Carolina residents' vehicles. *Id.* ¶ 23.

Plaintiffs have also sufficiently alleged claim-related events that generally fit within the scope of the transaction in this case. Plaintiffs allege that Defendants (1) charged *all* Plaintiffs annual interest rates far[3] exceeding the CFA limit, Dkt. 9, ¶ 26; (2) engaged in at least one of the contractual activities listed in Section 190(a) of the CFA within the state of North Carolina for each plaintiff, *id.* ¶ 27; *see also* N.C. Gen. Stat. § 53-190(a); and (3) used possibly unfair or deceptive practices under the UDTPA, such as Defendants' failure to disclose that North Carolina law prohibits these loans, and their illegal use of notaries to notarize documents outside the presence of the signer, place liens on their titles, and enter the state to wrongly convert Plaintiffs' vehicles, Dkt. 9 ¶ 33.[4] These facts are each logically related to Plaintiffs' claims.

---

[3] Although the rates differ, this is largely irrelevant. What matters to the CFA claim is that the rate exceeds the amount permissible under the CFA.

[4] Plaintiffs additionally allege that violations of the CFA in the same manner alleged here constitutes unfair and deceptive trade practices under the UDTPA. *See Wall v. AutoMoney*, 877 S.E.2d 37, 49 (N.C. Ct. App. 2022).

The logic of the Fourth Circuit's decision in *Hinson* confirms Plaintiffs' claims here are logically related, such that their right to relief arises out of the same transaction. *See generally Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611 (4th Cir. 2001). In *Hinson*, the plaintiffs borrowed money from the defendant secured by a mortgage on their homes. *See id*. at 613. Among other things, they claimed the defendant failed to inform them of their right to counsel of their choosing. *Id.* The plaintiffs moved to amend their complaint to add seven new plaintiff borrowers who, unlike the original plaintiffs, received *some* attorney preference information from the defendant, but who still alleged the notice, and other actions taken by Norwest, did not comply with state law. *Id.* at 614. The Fourth Circuit found the district court did not abuse its discretion by allowing the joining plaintiffs to proceed in the same action because they "participated in the same kind of transaction" as the original plaintiffs, namely (1) all transactions involved similar loans from the defendant, and (2) the joining plaintiffs "alleged the same or similar types of violations committed by [defendant] in these transactions." *Id.* at 618. These same characteristics are present here. All Plaintiffs participated in the same kind of alleged transaction: similar high-risk, high-rate title loans from the TitleMax defendants. All Plaintiffs alleged the same or similar types of violations committed by the Defendants in these transactions.

This "pattern" or "common scheme" of similar violative conduct by Defendants, as alleged in this case, further supports finding Plaintiffs' claims arose out of the same

7

transaction.  *Compare Stacy v. Jennmar Corp. of Virginia, Inc.*, 342 F.R.D. 215, 225 (W.D. Va. 2022) (finding transaction where plaintiffs alleged a "common enterprise" of 22 principal, subsidiary, or affiliate defendant entities who followed the same policies "in violation of federal law") *and Pontones v. Los Tres Magueyes, Inc.*, No. 5:18-cv-87, 2020 WL 12839920, at *2 (E.D.N.C. Feb. 6, 2020) (alleging common enterprise and permitting joinder where newly added defendants who owned and operated twelve restaurant locations including two where plaintiff was employed deprived Plaintiff and other employees of wages earned in violation of federal law) *with Slep-Tone*, 2011 WL 4713230 at *2, *4 (denying joinder of karaoke jockeys who independently engaged in "similar yet separately occurring acts" to violate the same trademark, where none of them knew of each other's trademark violations).

Defendants point to several factual differences, but most are not logically relevant to Plaintiffs' claims.  For instance, Defendants allege that the loan transactions took place "at different times, in different places, with different contractual terms, involving different witnesses, for different amounts, and at different interest rates."  Dkt. 5 at 10.  However, "absolute identity of all events is unnecessary."  *Mosley*, 497 F.2d at 1333.  What matters is how these differences are relevant to either claim, which Defendants fail to demonstrate.

Take the following illustration.  Your friend asks you if you went to the game that one Friday, claiming that the game "was crazy."  It may be hard for you to readily identify

the "game" your friend is referencing. You might start by asking her what type of game she meant. After all, baseball and Parcheesi are not similar, even though both are types of games. When you find out it was a baseball game, you might home in on game-specific details, like whether it was a minor league game or her son's little league game and whether you are thinking of the same Friday. What is *not* relevant is the section of the stadium where she may have sat or the vendors who brought her food. While they might have affected her experience at the game, they ultimately do not pertain to the central determination of whether you and your friend attended the same Friday baseball game.

Defendants' arguments largely focus on irrelevant differences or fail to demonstrate how these differences affect the disposition of Plaintiffs' claims. Some of these differences are almost entirely irrelevant (like different witnesses). Others are relevant, but only to the degree they impact the disposition of individual claims (such as the different times—to the extent they impact statute-of-limitations arguments, different interest rates, loan amounts, and contractual terms). From the Court's reading of the Amended Complaint, Plaintiffs essentially alleged they all attended the same metaphorical baseball game. The minor differences that Defendants identify do not substantively undermine that Plaintiffs' claims arose out of the same transaction or occurrence.

The lender-borrower and insurance cases cited by Defendants are distinguishable. The claim-related conduct in those cases is different from the parties here because no

9

common scheme was present. In *Kalie*, for instance, the plaintiffs alleged 26 types of wrongful conduct—some of which were completely unrelated—and did not indicate which misconduct applied to which plaintiff, defendant, or loan transaction. *See Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 555, 557-58 (S.D.N.Y. 2013). The plaintiffs in *Abraham* asserted more than a dozen claims against dozens of mortgage originators and servicers with unsupported assertions that "[d]efendants were involved in a common scheme or plan." *See Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 226, 230 (E.D.N.Y. 2013) (internal quotation omitted). In *Visendi*, the interactions between the plaintiffs and the wide array of more than two dozen defendant lending companies "were not uniform," and included "[f]actual disparities" of too great a magnitude to support permissive joinder. *See Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 866, 870 (9th Cir. 2013). And in *Grennell*, individual insurance agents separately induced over 1,000 plaintiffs to purchase insurance policies using different strategies by different misrepresentations, and none of the plaintiffs "had contact with any of the individual defendants." *See Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 392-93, 397-400 (S.D.W. Va. 2004).

These "vague," "amorphous," and disconnected events, *see Kalie*, 297 F.R.D. at 558, are far from the common scheme alleged here. This is one of 22 cases currently before the Court (16 of which are mass actions filed by North Carolina plaintiffs) with various TitleMax entities from various states that allege roughly the same facts. At least part of the alleged business scheme hinges upon high risk, high interest car title loans, which

10

may be lawful in some states but not in North Carolina, and potentially deceptive trade practices. Plaintiffs have met the first requirement of permissive joinder.

**B.      All Plaintiffs share a common question of law or fact.**

The common question of law or fact prong requires only that "at least one common question of law or fact" be raised by all plaintiffs. *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 384 (D. Md. 2011) (internal quotation omitted and citation modified). Plaintiffs have done so here.

In their briefing, both parties construe the common question of law or fact too narrowly. *Cf. Mosley*, 497 F.2d at 1334 (using the parallel requirement under Federal Rule of Civil Procedure 23(a) to guide construction of the common question required by Rule 20 and finding a "permissive application so that common questions have been found to exist in a wide range of context"). Defendants focus heavily on venue, personal jurisdiction, and arbitrability. *See* Dkt. 5 at 14-17. Plaintiffs implicitly argue the common question of law is arbitrability of the claims. Dkt. 9 ¶¶ 10-11.[5] Courts, however, generally focus on the *substantive* issues that apply to the plaintiffs' central claims, rather than adjacent issues like jurisdiction, procedure, or arbitrability. *See Hinson*, 239 F.3d at 618-19 (common question about common violations of same state substantive law); *Mosley*,

---

[5] Additionally, Plaintiffs complain that Defendants "continue[] to refuse to provide [their contracts]." Dkt. Entry 20 at 2. Yet, Plaintiffs have made no formal request seeking these contracts since the cases have been referred to the undersigned. To the extent Plaintiffs imply they are making such a request here, it is not appropriately raised or briefed.

11

497 F.2d at 1334 (common question about discrimination based on federal substantive law); *see also* 7 Wright, et al., Fed. Prac. & Proc. § 1653 (identifying the substantive issues which would be required for each plaintiff in a case that "thoroughly discussed the common-question requirement" between the similar New York joinder provision).

There are a lot of common questions of fact in this case. Questions of fact include "the who, what, when, where, and how of every legal dispute[.]" Randall H. Warner, *All Mixed Up About Mixed Questions*, 7 J. App. Prac. & Process 101, 105 (2005). Common questions of fact among all Plaintiffs that will arise in this action include whether: (1) the amount of their loan exceeds $25,000, *see* N.C. Gen. Stat. § 53-190(a) (loans made outside the state exceeding $25,000 do not apply); (2) the annual interest rate exceeds the percentages listed in N.C. Gen. Stat. § 53-176; (3) the installment loan is repayable between 12 and 96 months, *see id.*; and (4) Defendants engaged in at least one of the activities under N.C. Gen. Stat. § 53-190(a) within North Carolina for each loan transaction.

There are also common questions of law. A question of law involves "the creation of rules or the interpretation of existing rules." Warner, *supra*, at 105. Common questions of law in this case will include whether: (1) North Carolina public policy can apply to defeat a contractual choice of law clause; (2) Defendants' conduct constitutes unfair and deceptive practices under the UDTPA; and (3) Defendants' out-of-state lending scheme violates the CFA. As in *Hinson*, "similar principles of law" will apply to each Plaintiff.

12

239 F.3d at 618–19 (finding a common question of law where "similar principles" of South Carolina law "would have been applicable to both the original plaintiffs and the joined plaintiffs").

Because Plaintiffs meet both requirements for permissive joinder under Rule 20, joinder is warranted. *Cf. United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

## II. The Court Declines to Sever Plaintiffs' Claims Because Joinder Allows the Court to Expeditiously Resolve Issues, and the Court Finds No Prejudice Warranting Severance.

The Court finds severance unnecessary here because joinder will ameliorate administrative concerns, and the Court can determine threshold issues without prejudicing Defendants. Under Rule 21, a Court has discretion to deny joinder, even if the joining parties meet the requirements of Rule 20, if it will "result in prejudice, expense, or delay." *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007) (internal quotation omitted). None of these concerns are present here. Thus, "consistent with fairness to the parties," the Court declines to sever the parties under Rule 21. *See Gibbs*, 383 U.S. at 724.

13

### A. Even with Plaintiffs joined, the Court can determine threshold issues without prejudicing Defendants.

The Court is confident not only that joinder is appropriate,[6] but also that it is the best course of action. Moreover, Defendants are not prejudiced by it. Case proceedings in the other TitleMax cases, some of which have been pending in this Court since 2019, have not resulted in prejudice. However, if that should ever change, the Court retains authority to sever "at any time" it becomes warranted. *See* Fed. R. Civ. P. 21. That time is not now.

Defendants claim that joinder at this scale "obscures and confuses" threshold issues, such as personal jurisdiction, venue, and Plaintiffs' demands for arbitration. Dkt. 5 at 19-20. However, as Plaintiffs have pointed out, this Court has addressed these issues using jurisdictional discovery in a similar case with Defendants. *See, e.g.*, *Moreno v. Titlemax of Va., Inc.*, 735 F. Supp. 3d 645, 651-52 (M.D.N.C. 2024) ("*Moreno I*"); *Moreno v. TitleMax of Va., Inc.*, No. 1:23-cv-589, 2024 WL 4187938, at *1, *5 (M.D.N.C. Sept. 13, 2024) ("*Moreno II*"). For instance, *Moreno I* covered three mass actions against more defendants

---

[6] The Court recognizes that Plaintiffs are "the master of the complaint," and therefore control much about the contours of their suit. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)). While the Court exercises "wide discretion over permissive joinder," *see Sakthivel*, 2023 WL 2888565, at *5, the Court does not believe negating Plaintiffs' litigation decisions in this case, at least as to who the Plaintiffs should be, is necessary.

14

(seven), from more states (at least four), with more Plaintiffs with similar claims.[7] *See Moreno I*, 735 F. Supp. 3d at 649-51. Jurisdictional discovery furnished the personal jurisdiction-specific conduct for each defendant in relation to each plaintiff, *see id.* at 655, and the Court was able to adequately address the requirements for both personal jurisdiction and venue, *see id.* at 655-660 (holding personal jurisdiction over the defendants comported with state and constitutional requirements and denying motion to transfer venue because, among other things, "judicial efficiency would be significantly harmed by transferring the venue of [p]laintiffs' claims in piecemeal fashion").

The cases cited by Defendants in support of their argument for severance based on prejudice are distinguishable because the numerous claims in those cases varied significantly by the group of plaintiffs and defendants.[8] Thus, resolution of those cases

---

[7] The Motion to Dismiss based on lack of personal jurisdiction was limited to "claims by Plaintiffs who were not subject to repossession." *Moreno I*, 735 F. Supp. 3d at 651-52. The defendants in that case (which included entities other than the Defendants here) did not move to dismiss Plaintiffs whose vehicles were subject to repossession. According to the provided exhibits, 92 plaintiffs were subject to the Motion to Dismiss from the three cases: (*Moreno*: 45 plaintiffs, *see* Pls.' Resp. in Opp'n to Mot. to Dismiss, Dkt. 55-49 at 1-2, *Moreno I*, 1:23-cv-589 (M.D.N.C. Mar. 27, 2024); *Johnson*: 36 plaintiffs, Pls.' Resp. in Opp'n to Mot. to Dismiss, Dkt. 30-42 at 1-2, *see Johnson v. TitleMax of Virginia, Inc.*, 1:23-cv-807 (M.D.N.C. Mar. 27, 2024); *McClendon*: 11 plaintiffs, *see* Pls.' Resp. in Opp'n to Mot. to Dismiss, Dkt. 30-17 at 1, *McClendon v. Titlemax of Virginia, Inc.*, 1:23-cv-865 (M.D.N.C. Mar. 26, 2024)).

[8] Each of those cases involved a wide slew of defects with independent real estate transactions with mostly unrelated defendants, claims that varied significantly by the various groups of plaintiffs and each defendant, and significantly fewer relevant similarities than this case. *See Kalie*, 297 F.R.D. at 555, 557-58; *Carter v. Bank of Am., N.A.*, No. 1:11-cv-326, 2012 WL 2090530, at *1-3 (W.D.N.C. June 11, 2012); *Abatemarco v. Legasus of N.C., LLC*, No. 1:11-cv-23, 2012 WL 13001550, *1, *3-4 (W.D.N.C. June 1, 2012).

15

would have necessarily required an extraordinary number of "mini-trial[s]." *Abatemarco v. Legasus of N.C., LLC*, No. 1:11-cv-23, 2012 WL 13001550, at \*3 (W.D.N.C. June 1, 2012). Here, on the other hand, (1) these claims may be adjudicated individually by arbitrators if they are subject to arbitration agreements; and (2) the common scheme of these high-risk, high-interest loans includes much more logically related similarities than the cases cited by Defendants.

Joinder here is the best course of action because it comports with Rule 20, and it is more expeditious than the alternative. Additionally, this Court can resolve any threshold issues without prejudice to the Defendants. And, if "at any time" severance is warranted, the Court of course retains the discretion to sever. *See* Fed. R. Civ. P. 21.

### B. Administrative concerns weigh heavily in favor of joinder, rather than severance.

Administrative concerns also support joinder. For instance, there will likely be some overlap in witnesses, documentary proof, and common issues for the threshold determinations. *See Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 828 (S.D.N.Y. 2008). And if, as Plaintiffs argue, many of the Plaintiffs' actions are arbitrable, the substantive issues likely will not be addressed by this Court unless raised after arbitration has concluded.[9]

---

[9] This matches the pattern from other TitleMax cases.

16

While the Court appreciates Defendants' arguments about filing fees, filing statistics, and the Court's resources, *see* Dkt. 5 at 20-22, Defendants' proposed severance exacerbates, rather than alleviates, the Court's administrative concerns. There are already 22 similar cases involving similar TitleMax entities before this Court. Severing the Defendants and having them refile individual actions would require significantly more time for the Court as it manages each docket and resolves many of the same issues that could be addressed by a single text filing, opinion, or order. And if severance in the way Defendants described became a regular practice for future cases, the Court would not be surprised if these cases consumed most of its time and resources.

In any event, the Court "has broad discretion in ruling on a requested severance." *Carbon Fuel Co. v. USX Corp.*, 867 F. Supp. 414, 419 (S.D.W. Va. 1994) (permitting joinder of third-party defendants and declining to sever claims "[g]iven the expediency" of trying the claims together, even though the facts between the claims were not "precisely identical"). The Court highlights and relies on this discretion to decline severance here.

## CONCLUSION

The Court is not a for-profit entity. It exists to administer justice equitably and expeditiously. Joinder here does so and serves its intended purpose: "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval*, 710 F.2d at 103 (internal quotation omitted). Thus, the Court

17

declines to sever pursuant to Rule 21.  For the reasons stated above, Defendants' Motion

to Sever, Dkt. 4, is DENIED.

It is SO ORDERED.

This the 4th day of May, 2026.

_____
LINDSEY A. FREEMAN
UNITED STATES DISTRICT JUDGE